UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ELMIRA SHAHGALDYAN, | No. CV 14-06503-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the Decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") provided any

```
                reason for rejecting probative medical source opinions; and
        2.      Whether the ALJ correctly found Plaintiff did not suffer
                from a severe mental impairment.
```
(JS at 3-4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT IMPROPERLY REJECT PROBATIVE MEDICAL SOURCE OPINIONS**

After administrative denials and a hearing before an ALJ on January 31, 2012 (AR 48-72), an unfavorable Decision was issued on May 17, 2012. (AR 24-38.) In finding Plaintiff to be not disabled, the ALJ utilized the familiar five-step sequential evaluation process. (See 20 C.F.R. § 416.920.) At Step Two, the ALJ determined that Plaintiff suffered from medically determinable severe impairments consisting of degenerative disc disease of the lumbar spine and diabetes mellitus, type II. (AR 33, ¶ 2.) Finding at Step Three that these impairments did not meet or equal any of the Listings, the ALJ assessed a residual functional capacity ("RFC") which would permit Plaintiff to lift and carry 50 pounds occasionally and 25 pounds frequently; sit for about six hours in an eight-hour workday; and stand and/or walk for six of eight hours. (AR 34.) Comparing this RFC to the demands of Plaintiff's past relevant work ("PRW"), the ALJ determined that Plaintiff could perform her PRW. (AR 34.) Thus, the ALJ concluded that Plaintiff was not disabled under the requirements of the Social Security Act ("SSA"). (Id.)

1    The Appeals Council denied a request for review and thus, the
2 ALJ's Decision became the final Decision of the Commissioner.
3    Plaintiff primarily asserts that the ALJ failed to sufficiently
4 credit the conclusions of Dr. Flinders,[1] an examining physician who
5 completed a Qualified Medical Evaluation ("QME"). (AR 369-376 and 376-
6 386.) Plaintiff relies upon Dr. Flinders' initial opinion that
7 Plaintiff could not lift over 10 pounds or perform repetitive bending
8 or stooping (AR 372), and notes that Dr. Flinders made a similar
9 finding in a supplemental report (AR 379). Plaintiff asserts that the
10 ALJ failed to provide any reason, let alone a specific and legitimate
11 reason, to reject Dr. Flinders' opinion.
12    What Plaintiff fails to account for is that Dr. Flinders
13 conducted two examinations in connection with Plaintiff's Workers
14 Compensation claim. After the first examination, referenced above, Dr.
15 Flinders recommended that Plaintiff return to modified work activities
16 with no lifting over 10 pounds and no repetitive bending or stooping.
17 (AR 372.)
18    In a supplemental report dated December 8, 2006, Dr. Flinders
19 indicated a summary of his conclusions from the first examination. Dr.
20 Flinders performed a second examination on January 2, 2007 (AR 381-
21 385), which the ALJ directly addressed. (AR 31.) After performing a
22 complete examination, Dr. Flinders concluded that Plaintiff was in no
23 acute distress, that she could bend forward, had no muscle spasms,
24 could get on and off the examining table without discomfort or
25 assistance, and had a negative straight leg raising test. (AR 383.) He
26 concluded that Plaintiff's MRI was "essentially normal" aside from

---

[1] For some inexplicable reason, Plaintiff at times refers to Dr. Flinders as Dr. Fitzgerald.

3

some mild disc bulging at L5-S1, and that she demonstrated no evidence of stenosis or nerve root compression. (AR 383.) She had normal electromyography and nerve conduction velocity studies. (AR 382-383.) He also concluded that Plaintiff's subjective complaints did not correlate with his clinical findings, and he concluded there was a "lack of credibility in regard to her ongoing complaints of disability." (AR 384.) Significantly, he stated that "there does not appear to be anything wrong with [Plaintiff] other than her verbal complaints, she had no residual limitation or restriction [and] no disability," and he concluded she could return to her normal and regular work activities. (AR 384.)

Dr. Flinders assessed that Plaintiff was without any residual disability and in that conclusion he agreed with orthopedic surgeon Dr. Ashford. (AR 384.) Dr. Flinders also noted (AR 381) that Dr. Ashford had questioned Plaintiff's credibility, indicating in March 2006 that Dr. Ashford did not see any reason for Plaintiff to be having any kind of pain. (AR 362.) Dr. Ashford had reviewed Plaintiff's MRI, which showed no nerve compression. The ALJ observed that Dr. Ashford had found "0% impairment" in June 2006. (AR 31, 365.)

Thus, Plaintiff's argument that the ALJ failed to provide specific and legitimate reasons for "rejecting" Dr. Flinders April 2006 recommendations simply ignores that physician's more recent opinion that she could return to work without any limitations or restrictions whatsoever, and that she was not credible with regard to her complaints. (AR 384.) The ALJ's conclusion as to Plaintiff's RFC was completely consistent with Dr. Flinders' later findings that Plaintiff was not disabled and had no restrictions on returning to

4

work. (AR 34, 384.) It is more than implicitly clear that Dr. Flinders considered his early opinion preliminary and effectively mooted when, nine months later, he found that Plaintiff had no residual limitation or restriction and was without any signs of disability. (AR 384.) At best, Dr. Flinders' initial opinion was only temporary or preliminary, and the ALJ rightly considered his later opinion in formulating an appropriate RFC. Further, the ALJ did not rely only upon Dr. Flinders' later examination and conclusion, but also found it to be consistent with opinions of consultative examiner ("CE"), Dr. Enriquez (who found that Plaintiff was capable of medium work with frequent bending, stooping and twisting and no other limitations [AR 32; 442, 444-448]) and the opinion of State Agency physicians, which was consistent with those conclusions.

The Court agrees, therefore, that any error that might have occurred with regard to a failure to address or consider Dr. Flinders' April 2006 opinion was at most harmless error. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

For the foregoing reasons, the Court finds no error with regard to the ALJ's consideration of probative and relevant evidence provided by the examining and non-examining medical sources.

**II**

**THE ALJ CORRECTLY FOUND THAT PLAINTIFF DID NOT**

**SUFFER FROM A SEVERE MENTAL IMPAIRMENT**

Plaintiff alleged disability in part based on mental impairments. (AR 142.) Plaintiff's counsel argues that she "ingests potent psychotropic medications for treatment." (JS at 13-14, citing AR 466, 471, 474, 481, 491, 502, 505, 524, 602.) Counsel argues that Plaintiff

5

receives psychotherapy for her treatment (AR 832), and he further cites a progress note from April 14, 2011 in which there was a notation that Plaintiff had a sad and dysphoric affect. (AR 817.) He cites a November 2, 2010 indication by Plaintiff's physician that she was positive for anhedonia, anxious, fearful, forgetful, having severely impaired remote memory and mood swings. (AR 466.)

The ALJ's Decision indicates that the evidence regarding mental impairment was, in fact, carefully and properly considered. (AR 28-31.) Plaintiff's treating physician, Dr. Janoian, did diagnose Plaintiff at various times with depression, anxiety and panic disorder (see AR 524, 535), but the ALJ determined that these mental health examinations were cursory, largely reflected a repetition or reiteration of Plaintiff's own complaints, and were unsupported by test results or clinical evidence. (AR 28-30.) Further, as the ALJ noted, Dr. Janoian's records fail to reflect psychiatric signs which are necessary to establish the existence of a mental impairment. (See 20 C.F.R. § 416.929.)

Further, the ALJ noted that Plaintiff's treatment records from San Fernando Mental Health Clinic ("SFMHC") failed to demonstrate the existence of severe mental impairments. (AR 29-31.) Plaintiff failed to seek any treatment at this facility until seven months after she had applied for SSI benefits, and over five years after her alleged disability onset date. (AR 29, 118, 696, 705.)

In a February 2012 assessment, no functional limitations were noted, and in fact it was stated that Plaintiff seemed to be feeling better at this point. (AR 694-695; 29-31.) The ALJ thus concluded that the SFMHC records lacked any psychiatric signs or objective evidence or functional limitations and failed to demonstrate the existence of

severe mental impairments. (AR 29-31.)

The ALJ further considered the opinions of CE examiners Drs. Singer and Colonna and a State Agency reviewing psychiatrist, Dr. Johnson. (AR 29-31.) Dr. Singer examined Plaintiff in January 2011, at which time she complained about depression, but the doctor concluded that Plaintiff "did not appear overly depressed or anxious" and had no problems performing mental status examination tasks. (AR 29, 450-451.) Dr. Singer found Plaintiff mildly impaired in her ability to understand, remember and perform complex tasks but also concluded she was unimpaired for simple tasks. (AR 29, 451.) She had no impairment in her ability to relate and interact with co-workers, the public and supervisors (AR 29, 451), and Dr. Singer concluded there was no psychiatric basis to prevent Plaintiff from completing a full day of work. (Id.)

Dr. Johnson reviewed Plaintiff's record and concluded that her mental impairments were not severe. (AR 30, 453.) Dr. Johnson concluded that Plaintiff was less than fully credible and that her claimed functional limitations were unsupported by any objective evidence. (AR 463.) He found that Plaintiff had no restrictions in her activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no repeated episodes of extended duration decompensation. (AR 461.)

Dr. Colonna concluded in March 2012 that he had doubts about Plaintiff's credibility, finding that she was less that credible. He concluded that she had only mild limitations in her ability to understand, remember and carry out detailed instructions and to interact appropriately with supervisors, co-workers and peers; that

7

1 | she could manage her own finances and could understand, remember and
2 | carry out short, simple instructions and make simplistic work-related
3 | decisions without any special supervision. (AR 29-30, 752.)
4 |     Based on all these findings, the ALJ found Plaintiff to be not
5 | credible. (AR 31-32.) Plaintiff does not raise credibility assessment
6 | as an issue in this litigation.
7 |     After analyzing this evidence, the ALJ applied the correct review
8 | technique as outlined in 20 C.F.R. § 416.920a to evaluate the
9 | functional limitations and severity of claimed mental impairments. (AR
10 | 28-30.) The ALJ's conclusions were consistent with a finding of no
11 | severe mental impairment. (AR 28-31.) He did examine and make
12 | reasoned, evidence-based conclusions regarding the four broad
13 | functional areas encompassed in the review technique, and the Court
14 | finds that substantial evidence supports the ALJ's conclusions that
15 | Plaintiff did not have severe mental impairments. The ALJ's
16 | conclusions meet the requirements set out in <u>Smolen v. Chater</u>, 80 F.3d
17 | 1271 (9th Cir. 1996).
18 |     The decision of the ALJ will be affirmed. The Complaint will be
19 | dismissed with prejudice.
20 |     **IT IS SO ORDERED.**

22 | DATED: June 3, 2015          /s/
                                  VICTOR B. KENTON
23 |                              UNITED STATES MAGISTRATE JUDGE